1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ryan M. Best, WSBA # 33672
Jacob Mark, WSBA # 54280
Michael Merkelbach, WSBA # 55389
Best Law, PLLC
905 W. Riverside, Suite 409
Spokane, WA 99201
Telephone: (509) 624-4422
ryan.best@bestlawspokane.com
jmark@bestlawspokane.com
mike.m@bestlawspokane.com

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

RONALD SHIELDS, individually and as
Personal Representative of the Estate of
NORMA SHIELDS, and on behalf of the
marital community of RONALD
SHIELDS and NORMA SHIELDS,

     Plaintiffs,

vs.

TRANSAMERICA PREMIER LIFE
INSURANCE COMPANY, an IOWA
Corporation; and, NATIONAL RIFLE
ASSOCIATION OF AMERICA, a New
York Foreign Nonprofit Corporation,
d/b/a NRA Endorsed Insurance Program;
and, A.G.I.A. INC., a California
Corporation d/b/a AGIA Affinity, and as
agent/Partner of NRA Endorsed Insurance
Program;

     Defendants.

No.

COMPLAINT FOR DAMAGES

Plaintiffs, by and through Ryan M. Best, Jacob A. Mark, and Michael R. Merkelbach of Best Law, PLLC complain of Defendants and allege as follows:

## I.    PARTIES, JURISDICTION, VENUE, AND COVERAGE

1.1    Ronald Shields is a resident of the Eastern District of Washington, residing in Newport, Washington. Prior to the passing of Norma Shields, Ronald Shields was married to Norma Shields.

1.2    Ronald Shields was born on December 2, 1933 and is 86 years old.

1.3    Pursuant to RCW 4.44.025, Plaintiffs seek priority in setting an expedited trial dated based upon Mr. Shields being 86 years of age and frail.

1.4    Norma Shields was a resident of the Eastern District of Washington residing in Newport, Washington until the date of her death on November 23, 2018. These claims are made on behalf of her estate, the marital estate of Norma and Ronald Shields, and Ronald Shields, in his individual and representative capacities, and under Washington survival statutes, including but not limited to, RCW 4.20.046 and 4.20.060.

1.5    Plaintiffs purchased the insurance policy at issue in this matter in the Eastern District of Washington. Venue is thus proper within the Eastern District of Washington pursuant to 28 U.S.C § 1391.

1.6    After Mrs. Shields passed, Plaintiff Ronald Shields continued to pay for the policy he purchased with his wife.

1.7    At all times material hereto, Defendant TransAmerica Premier Life Insurance Company (hereafter "Transamerica"), is a Delaware corporation that does business in the Eastern District of Washington.

1.8    At all times material hereto, Defendant A.G.I.A. INC. (hereafter "AGIA"), doing business as AGIA Affinity, is a California corporation that does business in the Eastern District of Washington.

1.9    At all times material hereto, Defendant National Rifle Association of America (hereafter "NRA"), doing business as NRA Endorsed Insurance Program, is a New York Foreign Nonprofit Corporation that does business in the Eastern District of Washington.

1.10    Despite the NRA's never being licensed in Washington State in any capacity regarding insurance, the NRA's participation in endorsing and marketing insurance programs means, under Washington law, that the NRA has been acting, and continues to act, as an "insurance producer" in Washington State.

1.11    Transamerica provides, and provided, insurance coverage for the Plaintiffs pursuant to an insurance contract and is a successor in interest to policies sold by all Defendants.

1.12    Transamerica conducts business in the State of Washington and specifically in the Eastern District of Washington.

COMPLAINT FOR DAMAGES - 3

1.13   The NRA, through its own actions of selling, soliciting, negotiating, and advertising insurance also conducted business in the Eastern District of Washington.

1.14   Plaintiffs made a death benefit claim under the policy and made a claim for other promised benefits under the policy and in advertisements by the NRA.

1.15   Plaintiffs provided a proof of loss and reasonable proof of claims to Transamerica as required by Washington law.

1.16   Transamerica has failed to honor its contract and its policy with Plaintiffs.

1.17   Transamerica has not paid the claim pursuant to the policy, but also has engaged in deceptive and misleading practices with the NRA and other known Defendants.

1.18   Transamerica engaged in bad faith insurance practices, breached its contract, and violated Washington State Law including, but not limited to, the Insurance Fair Conduct Act and Consumer Protection Act, including, but not limited to, twisting, unfair competition, and deceptive advertising by Transamerica and the NRA.

1.19   Defendant NRA engaged in deceptive acts and practices and other tortious conduct within the Eastern District of Washington.

1.20  Defendant AGIA engaged in deceptive acts and practices and other tortious illegal and inequitable conduct within the Eastern District of Washington.

1.21  Federal jurisdiction in this matter is proper under 28 U.S.C. § 1332 as Plaintiff Ronald Shields is a Washington resident and the amount in controversy in this matter exceeds $75,000.00.

1.22  Pursuant to RCW 48.05.215, Defendants have submitted to Washington State's jurisdiction in this action brought by Plaintiffs.

1.23  Upon information and belief, and incorporating by reference the Statement of Charges In the Matter of: The National Rifle Association of America, particularly but not limited to, ¶¶ 49 – 51, the NRA has and continues to charge, and receive, royalties on premiums charged to Plaintiffs for their Cancer Benefits policy for "$1,000,000.00 paid out in hard cash".

    1.23.1  Statement of Charges ¶ 49 states in part: The NRA was compensated handsomely for its participation in these insurance programs through royalties that were based on a percentage of the insurance premiums paid by NRA members. Those royalty percentages varied by program, but most ranged between 13.67% to 21.92% of the premium amounts received by

Lockton. Nationwide, NRA received millions of dollars per year in royalties and profit-sharing payments in connection with other NRA programs.

1.23.2     Statement of Charges ¶ 50 states: The royalties and profit-sharing revenues collected by the NRA were impermissibly based, at least in part, on a percentage of premium collected on policies sold.

1.23.3     Statement of Charges ¶ 51 states: The NRA participated in marketing its insurance programs through websites, mailings, emails, and other methods, repeatedly representing in those materials that "[t]he NRA and the Insurance Program administrators work closely together in all aspects of the insurance programs, negotiating the most comprehensive coverage at the lowest possible cost to you, and producing enrollment materials that make it easy for you to select and purchase appropriate insurance coverage."

1.24    Under Washington law an "Insurance Producer" is a person required to be licensed under the laws of Washington State to sell, solicit, or negotiate insurance.

1.25    Regarding Insurance Producers, Washington State law defines "sell" as to exchange a contract of insurance by any means, for money or its equivalent, on behalf of an insurer.

1.26    Regarding Insurance Producers, Washington State law defines "Solicit" as attempting to sell insurance or asking or urging a person to apply for a particular kind of insurance from a particular insurer.

1.27    Regarding Insurance Producers, Washington State law defines "negotiate" as the act of conferring directly with, or offering advice directly to, a purchaser or prospective purchaser of a particular contract of insurance concerning any of the substantive benefits, terms, or conditions of the contract, provided that the person engaged in the act either sells insurance or obtains insurance from insurers for purchasers.

1.28    The NRA has acted improperly as a producer of insurance in Washington State.

## II.    FACTS

### A.    Cancer Insurance Policy

2.1    Plaintiff Ron Shields became a member of the National Rifle Association of America in the 1960s.

2.2    Ron Shields is a "lifetime" and "endowed" member of the NRA.

2.3    The NRA first offered Mr. and Mrs. Shields the cancer insurance plan through advertising directed toward NRA members.

2.4    The Director of NRA Membership Insurance Plans sent Mr. and Mrs. Shields a letter describing the likelihood of contracting cancer, cited statistical cancer research to demonstrate the likelihood of one of them contracting cancer, and made recommendations for insurance coverage for the Plaintiffs to avoid financial hardship of paying for cancer treatments.

2.5    Based on the NRA's promise to deliver "$1,000,000.00 paid out in hard cash" presented to the Shields', Mr. and Mrs. Shields decided to enroll in the cancer insurance policy offered by the NRA.

2.6    The NRA Director's letter notified the Shields' that "odds are one of you will get cancer sooner or later."

2.7    The NRA Director's letter also assured the Shields' that the NRA's "wonderful NRA Cancer Plan can give [the Shields] all the financial security of a million dollars when your life is on the line."

2.8    The NRA Director's recommendation for the NRA Cancer Plan purported to provide "$1,000,000.00 paid out in hard cash directly to you."

2.9    The plan being sold did not contain a million dollars in cash benefits to the NRA member in excess of medical bills and medical expenses.

2.10    The policy marketed did not pay cash.

2.11    The policy, even if several cancers were found, would never be able to pay $1,000,000.00 in "hard cash" in excess of medical bills.

2.12    Upon information and belief, the NRA's Director of NRA Membership Insurance Plans received additional payment and/or royalty for every NRA membership insurance plan he sold.

2.13    Plaintiffs originally purchased and paid for their cancer insurance policy through North American Life and Casualty Company.

2.14    North American Life and Casualty Company later changed its name to Allianz Life Insurance Company of North America.

2.15    Upon information and belief, NRA Endorsed Insurance Program, transitioned the Plaintiffs policy from Allianz Life Insurance Company of North America to CIGNA on June 1, 2001, but continued to receive royalties and failed to disclose their previous false and misleading conduct to Plaintiffs.

2.16    All successors in interest have derived, benefited, and gained from the tortious acts of North American Life and Casualty Company and the NRA.

2.17   Upon information and belief, NRA Endorsed Insurance Program partnered/merged or affiliated with Monumental Life Insurance Company on January 1, 2014, and subsequently changed its name to Transamerica on July 31, 2014 according to the policy. Despite the name change, it still accepted payments and issued receipts as the NRA Endorsed Insurance Program.

2.18   The NRA Endorsed Insurance Program continued to issue receipts for payments sent by Ron Shields for the coverage into 2020.

2.19   The NRA Endorsed Insurance Program has changed its name several times.

2.20   A true and correct copy of the policy is attached and incorporated herein by reference as Exhibit 1.

2.21   Plaintiffs were never made aware of the changes in their policy.

2.22   Despite the afore-mentioned policy changes, Plaintiffs continued to pay their premiums on their insurance policy directly to NRA Endorsed Benefit Program.

2.23   Plaintiffs did so to receive the "$1,000,000.00 paid out in hard cash" benefit, as promised by the NRA.

2.24   Plaintiff Ron Shields continues to suffer economic damages with each payment for Plaintiffs' policy.

2.25   Mr. and Mrs. Shields are "first party claimants" as that term is defined in the Washington Unfair Claim Settlement Practices Regulation and Washington's Insurance Fair Conduct Act (IFCA), RCW 48.30.010(7) and RCW 48.30.015.

2.26   The insurance policy in this matter is a valid and enforceable contract.

2.27   Defendants owe Mr. Shields, their policyholder, a duty of good faith.

2.28   Defendants owed Mr. and Mrs. Shields a duty of good faith and owe the Estate of Ms. Shields a duty of good faith.

2.29   Defendants owe Mr. and Mrs. Shields, their policyholders and NRA endowed member, a fiduciary duty. They have an obligation to tell the truth, to have a lawful purpose, to deal fairly with Plaintiffs, and to give equal consideration to the Plaintiffs' interests as it does to its own.

2.30   Defendants are prohibited from engaging in conduct toward Mr. Shields, its policyholder and Plaintiffs generally, that is in any way unreasonable, frivolous, or unfounded.

2.31   The Defendants had an obligation to correct misleading, deceptive, and false statements made to Plaintiffs.

2.32   Defendants must conduct a full, fair, and prompt investigation of all materials aspects of the insurance claim at their own expense.

2.33   The Unfair Claims Settlement Practices Regulation, which is found in chapter 284-30 of the Washington Administrative Code, imposes duties to insurance companies. Transamerica owes those duties to Plaintiffs. The Unfair Claims Settlement Practices Regulation is incorporated herein by reference.

2.34   Insurance industry standards and Washington law and regulations require Transamerica to comply with the Unfair Claim Settlement Practices Act and related Washington Administrative Codes.

2.35   Without limitation, the Unfair Claim Settlement Practices Act provides that insurers:

A.   must disclose all pertinent benefits, coverages, or other provisions of an insurance policy under which a claim is presented;

B.   must acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

C.   must adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

D.   must not refuse to pay claims without conducting a reasonable investigation;

E.   must complete its investigation of the claim within 30 days after notification of the claim, unless the investigation cannot reasonably be completed within that time; and

F.   must notify the first party claimant whether the claim has been accepted or denied within 15 working days after receipt by the insurer of fully completed and executed proofs of loss.

2.36   To ensure compliance with legal and industry standards, insurance companies have a responsibility to properly train employees involved in claims-handling activity.

2.37   Plaintiffs' Monumental Life Insurance Company/Transamerica Cancer Insurance Benefit states:

A.   "we will pay benefits according to the schedule for Cancer that manifests itself while the Covered Person is insured under the Policy and any attached Riders. These benefit payments will begin for covered expenses incurred up to 90 days before the date the first pathological diagnosis is made."

B.   "If the Covered Person receives treatment for Cancer but positive diagnosis is not made during his lifetime, we will make payment if positive diagnosis is made after death. This payment will begin for

covered expenses incurred up to 90 days before the date of diagnosis by a Certified Pathologist."

2.38   Policy provisions within the policies are unconscionable and violate Washington public policy.

2.39   Per RCW 48.01.030, all persons in the business of insurance must be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters.

2.40   Defendants have violated RCW 48.01.030 in their claims handling, twisting, advertising, and acts of maintaining insurance policies in the state of Washington.

2.41   Defendants' advertisement of the NRA Cancer Plan was a solicitation to sell insurance and a recommendation for coverage.

2.42   As a solicitation, the advertisement (Exhibit 2), qualifies as an insurance transaction under RCW 48.01.060.

2.43   Defendants continue to conduct insurance transactions on this policy.

2.44   Defendants, in regard to their actions, acted in concert, as agents of each other, and have vicarious and fiduciary responsibilities to Plaintiffs and each other.

2.45   The NRA acted, and continues to act, in deceptive and misleading ways to aid its agents and partnered insurers in marketing and soliciting

insurance based on false statements to NRA members advertising benefits and payouts their members would never receive.

2.46   The NRA also maintains a special relationship with its membership and had never alerted or notified its members of its previous deceptive, misleading, and illegal practices.

2.47   Mr. Shields pays substantially more for his NRA membership as an endowed member to receive special benefits.

2.48   NRA-affiliated insurers continue to charge premiums on Plaintiffs' policy that was solicited using false and misleading terms.

2.49   Marketing materials relating to the NRA-endorsed insurance program marketed to Plaintiffs failed to disclose that the NRA was, and upon information and belief continues to be, compensated for the sale of insurance policies to its members using false and misleading advertisements to sell insurance policies whose terms do not match the NRA's solicitations.

2.50   The insurers named in this matter have knowledge of the NRA's illegal and unlicensed activities and of their own.

//

//

//

### B.    Facts – Loss Under the Policy

2.51    In or around March 1986, Plaintiffs received a letter from John C. Bartholf, NRA Director of Membership Insurance Plans, addressed to an "NRA Member."

2.52    A true and correct copy of the letter is attached and incorporated herein by reference as <u>Exhibit 2</u>.

2.53    The letter from John C. Bartholf, NRA Director of Membership Insurance Plans, induced Mr. and Mrs. Shields to buy the NRA Cancer Insurance.

2.54    Mr. Bartholf's letter stated specifically, "$1,000,000.00 paid out in hard cash directly to you." As well as, "$1,000,000.00 provided in lifetime hospital benefits – with case for Doctor Visits, Surgery, Anesthesia, Nursing Care, Extended Care, Chemotherapy, Radium, Drug Treatments, Medicine, Blood & Plasma, Ambulance, and Disability Compensation Option."

2.55    The original invoice from NRA Group Cancer Insurance Program is attached and incorporated herein as <u>Exhibit 3</u>.

2.56    After paying their first premium, Mr. and Mrs. Shields received their policy from North American Life and Casualty Company.

2.57    A true and correct copy is attached and incorporated herein as <u>Exhibit 4</u>.

2.58    This policy lists the National Rifle Association (NRA) as the policyholder.

2.59    Thus, the NRA held the policy described by the NRA's letter (Exhibit 2) in a resulting trust for the Plaintiffs.

2.60    Based on its fraud and deceptions, the NRA continued to accept Mr. and Mrs. Shields' premiums for over 30 years, and continues to accept Mr. Shields' premiums to this day.

2.61    On August 29, 2018, Norma Shields was diagnosed with colon cancer after obtaining a CT of her pelvis and chest.

2.62    A true and correct copy of the Cancer Care Northwest test results are attached and incorporated herein as Exhibit 5.

2.63    Shortly after her diagnosis, Mrs. Shields succumbed to her cancer and died on November 23, 2018.

2.64    Mrs. Shields, during her battle with cancer, took solace in knowing that her husband would receive the promised $1,000,000.00.

2.65    A true and correct copy of Norma Shields' Death Certificate is attached and incorporated herein as Exhibit 6, which states her cause of death as "Colon Cancer, Metastatic to Liver."

2.66    On February 27, 2019, the NRA Endorsed Benefits received notice of Mr. Shields' death benefit claim sent by Mr. Shields.

2.67  The death certificate includes the cause of death as cancer.

2.68  The Defendants closed the claim insisting on a pathology report.

2.69  This request was not reasonable and made in bad faith.

2.70  Defendants made an insufficient investigation of this claim and did not analyze the claim in good faith or pay the claim in good faith.

2.71  A true and correct copy of the certified mail records are attached and incorporated herein by reference as Exhibit 7.

2.72  The Monumental Life/Transamerica policy, (Exhibit 1) states:

    A.  Payment of Claims – "Claims for benefits provided by this Policy will be paid as soon as written proof is received."

2.73  Transamerica did not pay on this claim and still has not paid the claim.

2.74  The NRA, as the policy holder of the policy, has not issued payment to Mr. Shields as promised in Exhibit 2 despite having received premiums since 1986.

2.75  The NRA is not, and has never been, licensed to sell insurance in Washington.

2.76  On May 31, 2019, the NRA Endorsed Member Benefits sent a letter to Mr. Shields requesting additional information.

2.77    This May 31, 2019 letter was sent three months after Mr. Shields notified the NRA Endorsed Member Benefits of his loss under the policy.

2.78    Washington law requires a response within 30 days.

2.79    The NRA Endorsed Member Benefits letter violated Washington law.

2.80    The May 31, 2019 letter is attached and incorporated herein for reference as Exhibit 8.

2.81    On January 31, 2020 an Insurance Fair Conduct Notice was sent to the NRA and Transamerica.

2.82    A true and correct copy of which is attached and incorporated herein by reference as Exhibit 9.

2.83    The January 31, 2020 notified Defendants of its failures to comply with Washington State law and allowed Defendants twenty days to cure the deficiencies in their conduct.

2.84    The NRA responded to the IFCA Notice on February 26, 2020.

2.85    This response was also untimely under Washington law.

2.86    A true and correct copy of their response letter is attached and incorporated herein by reference as Exhibit 10.

2.87    The NRA's letter states that currently, under the Transamerica policy, the lifetime benefit has been reduced from $1,000,000.00 to $250,000.00.

2.88    No notice had ever been provided by the NRA or other defendants of this change in the policy benefits to Plaintiffs.

2.89    Mr. and Mrs. Shields paid premiums on a policy that purported to provide "$1,000,000 paid out in hard cash," only to be told that the purchased policy was only worth $250,000.00, and that $250,000 was to reimburse medical expenses.

2.90    To further escalate an already sensitive matter, on February 8, 2020, the NRA sent a letter to Norma Shields stating they had received her claim submission on February 6, 2020. Mrs. Shields had been deceased since 2018.

2.91    A true and correct copy of this letter is attached and incorporated herein by reference as <u>Exhibit 11</u>.

2.92    Any reasonable investigation of Mr. Shields' claim would have resulted in Defendants' knowledge of Mrs. Shields' death.

2.93    Defendants' refusal to pay claims without conducting a reasonable investigation is a violation of Washington law.

2.94    Defendants' failure to properly acknowledge Plaintiffs' claim within twenty days constitutes a violation of the Insurance Fair Conduct Act.

2.95    Defendants, by failing to properly and timely evaluate this matter, have acted in bad faith and in violation of Washington State law.

2.96    Defendants, by failing to pay the claim in a timely manner, have violated Washington State law.

2.97    The policy, written by Defendants, violates Washington law, and policy exclusions violate Washington State public policies, regulations, insurance laws.

2.98    At the time of Defendants' receipt of Plaintiffs' notice of loss, Defendants had no basis for denying the claim.

2.99    Defendants continue to accept premium payments.

2.100   Defendants have not issued any payments to Plaintiffs.

2.101   Defendants have not paid Plaintiffs for any portion of the cancer-related medical bills – totaling over 1 million dollars – Plaintiffs incurred while Mrs. Shields was battling cancer.

## III.    CAUSES OF ACTION

### First Cause of Action:
### NEGLIGENCE

3.1    The allegations set forth in Paragraphs 1.1 through 2.101 above are expressly incorporated herein by reference.

3.2    Plaintiffs and Defendants entered into a contractual relationship for the policy currently at issue.

3.3    As laid out above in Section II of this complaint, a cancer-causing loss of life qualifies for coverage.

3.4    Transamerica, through its agent, the NRA, had a duty to pay claims under its policy and to legally sell insurance in Washington state under both Washington statutory and common law.

3.5    Defendants violated and breached both duties to Plaintiffs as detailed above in Section II and as detailed in Section III of this Complaint.

3.6    Defendants' negligent breaches of the legal duties they owed to Plaintiffs have caused damages to Plaintiffs including, but not limited to, the $1,000,000.00 advertised by the NRA to pay for cancer treatment, alternatively premiums paid by Plaintiffs for a policy that did not pay the $1,000,000.00 negligently advertised; pre and post judgment on the liquidated $1,000,000.00 of benefit advertised; general damages; emotional distress; loss of chance to obtain better coverages; adverse tax consequences; and attorney fees.

3.7    Plaintiffs do not and will not agree to arbitration of this matter.

## Second Cause of Action:
## PROFESSIONAL NEGLIGENCE

3.8    The allegations set forth in Paragraphs 1.1 through 3.7 above are expressly incorporated herein by reference.

3.9    Defendants engaged in Professional Negligence in Claims Handling, Professional Negligence in Deceptive Advertising, Illegal Sale of

Insurance, and Negligence in the Unauthorized and Unlicensed marketing and sale of insurance in Washington state.

3.10    Plaintiffs' claims did not accrue at least until Plaintiffs incurred over $1,000,000.00 in cancer bills and Defendants refused to pay claims.

3.11    Plaintiffs continue to suffer damages and to discover false, deceptive, and misleading conduct.

3.12    The NRA sold insurance using false, deceptive, and misleading advertising.

3.13    Defendants had a duty to review and counsel Mr. and Mrs. Shields regarding the coverage they were providing. Defendants also had a duty to advertise their insurance policies using advertisements that contained accurate information regarding the benefits to be received.

3.14    Defendants breached that duty by advertising "$1,000,000.00 paid out in hard cash directly to you" when a one-million-dollar payout was impossible under the policy actually provided to Mr. and Mrs. Shields.

3.15    Even if Mrs. Shields had every form of cancer known, her payout under the policy would not have matched the NRA's advertisement to its NRA members.

3.16  The policy, per its terms, pays a small fraction of cancer expenses incurred, and does not pay $1,000,000 in excess of medical bills, nor would it pay a value of $1,000,000 in any form as advertised.

### Third Cause of Action:
### CONSUMER PROTECTION ACT

#### A.  Violation – Deceptive Practice / Advertising

3.17  The allegations set forth in Paragraphs 1.1 through 3.16 above are expressly incorporated herein by reference.

3.18  Plaintiffs assert violations of RCW 19.86 Washington Consumer Protection Act regarding the deceptive, false, and misleading advertising of their Cancer benefits policy.

3.19  Pursuant to Washington's Insurance Code RCW 48.30, insurance claims and insurance policy sales are per se matters of public interest and subject to the insurance code.

#### B.  Violation - Twisting

3.20  The allegations set forth in Paragraphs 1.1 through 3.19 above are expressly incorporated herein by reference.

3.21  RCW 48.30.180 states "No person shall by misrepresentations or misleading comparisons, induce or tend to induce any insured to lapse, terminate, forfeit, surrender, retain, or convert any insurance policy."

3.22  Defendants' policy had been advertised to Plaintiffs as providing "$1,000,000.00 paid out in hard cash directly to you. (<u>Not</u> the doctor or hospital.) Spend the money as you wish."

3.23  The policy sold never had a value of $1,000,000.00 in cash or coverage.

3.24  Indeed, if Plaintiffs had each and every type of existing Cancer, the payments under the Policy (<u>Exhibit 4</u>) would not have totaled $1,000,000.00 as advertised.

3.25  As written, there is no possible way for any person to ever receive $1,000,000.00 in cash from the policy.

3.26  Defendant NRA, through its misrepresentations, induced Plaintiffs to retain or convert their insurance policy.

3.27  Later, Defendant NRA would convert the policy – without providing notice to Plaintiffs – to even further lower coverages, while maintaining identical premiums for massively reduced benefits.

3.28  Even with the reduced coverages, no benefits have been paid under any policy.

### Fourth Cause of Action:
### <u>FRAUD IN THE SALE, SOLICITATION, NEGOTIATION, AND ADVERTISING OF INSURANCE, CLAIMS HANDLING, AND FRAUDULENT INDUCEMENT TO CONTRACT</u>

3.29  The allegations set forth in Paragraphs 1.1 through 3.28 above are expressly incorporated herein by reference.

3.30   The NRA knowingly engaged in fraud through false, misleading, and deceptive advertising, brokering, and selling of its cancer policy in violation of RCW 48.30.040 and other WA statutes as well as Washington common law.

3.31   The NRA, in marketing its insurance policy, engaged in fraud, deceit, and made false and deceptive statements.

3.32   The NRA's deceptive misrepresentation of the policy terms is a violation of RCW 48.30.090.

3.33   The letter attached as <u>Exhibit 2</u> was designed to fraudulently convince those purchasing the associated insurance policy that they would or could receive up to $1,000,000.00 in cash to be used at the discretion of the policy holder.

3.34   No requirements, such as expressed by the Defendants in the claims process, were expressed in the letter.

3.35   The letter was designed to convince Mr. and Mrs. Shields that they were likely to contract cancer by stating that "odds are one of you will get cancer sooner or later."

3.36   The letter was designed to convince Mr. and Mrs. Shields that the NRA Cancer Plan was necessary to protect themselves, but also to protect any

children they may have in the future by stating "Children are no exception: Cancer kills more youngsters than any other disease!)."

3.37    The policy purchased conveyed minimal benefits, and to achieve those minimal benefits a holder of the policy would have to suffer multiple cancers of different types.

3.38    The advertisement and the insurance policy sold have wildly inconsistent terms.

3.39    The policy conveys, at best, only a tiny fraction of cancer expenses incurred and covers only a tiny fraction of the benefits advertised.

3.40    The letter promises "$1,000,000.00 paid out in hard cash directly to you."

3.41    The letter was formatted and written to deceive potential purchasers about the value and benefits of the policy being sold.

3.42    Statements in the letter attached as <u>Exhibit 2</u> falsely represent material facts.

3.43    The defendants were aware of the false statements in the letter at the time of their inspection.

3.44    The false, deceptive, and misleading statements were intended to be relied upon and intended to induce purchase of the policy on false terms.

3.45    Plaintiffs were ignorant of the falsity of the letters claims until August of 2019.

3.46    Plaintiffs relied on the letters representations while making premium payments for the last 35 years.

3.47    Mr. and Mrs. Shields paid all premiums until Mrs. Shields died. After Mrs. Shields' death, Mr. Shields paid, and continues to pay, all premiums on the policy.

3.48    Plaintiffs had a right to rely on Defendants' representations to be legal and true.

3.49    Plaintiffs have incurred damages as a result of Defendants' deceptive and fraudulent acts.

**Fifth Cause of Action:**
**BREACH OF FIDUCIARY DUTY AND/OR**
**BREACH OF QUASI FIDUCIARY DUTY**

3.50    The allegations set forth in Paragraphs 1.1 through 3.49 above are expressly incorporated herein by reference.

3.51    Plaintiffs were relying on Defendants' superior specialized knowledge in purchasing the insurance policy (Exhibit 4) and were relying on the statements made in Exhibit 2 to be true.

3.52    Defendants, in selling this policy, retaining this policy, and in collecting premiums from 1986 to the present, have acted in bad faith and breached the fiduciary and quasi fiduciary duties owed to Plaintiffs.

3.53   As a result of Defendants' breach of fiduciary duties, deceptive advertising, and negligently supervising the sale and claims administration of policies, Plaintiffs have incurred, and continue to incur, damages due to Defendants' continuing torts.

3.54   Defendants had a duty to disclose material facts to Plaintiffs, but failed to do so for over 35 years while continuing to collect Plaintiffs' premiums.

3.55   Plaintiffs have incurred damages by Defendants' failure to disclose material facts deceptively misrepresented in <u>Exhibit 2</u>.

<strong><u>Sixth Cause of Action:</u></strong><br/><strong><u>INSURANCE FAIR CONDUCT ACT/</u></strong><br/><strong><u>CONSUMER PROTECTION ACT</u></strong>

3.56   The allegations set forth in Paragraphs 1.1 through 3.55 above are expressly incorporated herein by reference.

3.57   Despite Plaintiffs' valid request for payment under the policy in <u>Exhibit 1</u>, Defendants failed to acknowledge pertinent communications.

3.58   Defendants also chose not to properly investigate Plaintiffs' claim.

3.59   Plaintiffs were wrongfully required to initiate litigation in order to receive the proper amount due under the policy as a result of Defendants' refusal to pay the value of this claim. These acts and omissions violated several subsections of WAC 284-30 and RCW 48.30 ("IFCA").

3.60   Plaintiffs repeatedly satisfied the requirement of RCW 48.30.015 for pre-suit IFCA, and this complaint incorporates the allegations from those notices attached as Exhibits 5, 6, 7, and 9.

3.61   Plaintiffs seek recovery under IFCA and the Consumer Protection Act for these violations of Washington statutes and common law.

3.62   Defendants committed an unfair trade practice when they acted in bad faith, violating WAC 284-30-330, WAC 284-30-360, WAC 284-30-370 and WAC 284-30-380.

3.63   Plaintiffs' complaint involves the policy which is an insurance contract.

3.64   Defendants are engaged in the business of insurance which is one affected by the public interest.

3.65   Plaintiffs sustained injury to the business relationship as a result of Defendants' actions, as well as interest, attorney fees, and CPA/IFCA penalties.

**Seventh Cause of Action:**
**CONSUMER PROTECTION ACT –**
**DECEPTIVE PRACTICES / UNFAIR COMPETITION**

3.66   The allegations set forth in Paragraphs 1.1 through 3.65 above are expressly incorporated herein by reference.

3.67   Defendants acted without a reasonable basis in denying coverage.

3.68   Defendants' conduct in delaying claims payments was not reasonable.

3.69 Defendants' failure to disclose limitations and exclusions on coverage was unreasonable, unfair, misleading, and based upon prior advertisements of policy, deceptive and unconscionable.

3.70 Defendants engaged in unfair competition by using deceptive and misleading advertising.

3.71 The Defendants' acts in selling insurance, investigating claims, and delaying and denying claims are areas/practices of public interest.

3.72 Defendants violated Washington State law in its claims handling and claims handling procedures, thus violating the Insurance Fair Claims Act, the Consumer Protection Act, and associated regulations.

3.73 Defendants, in their advertising, twisting of the policy, changing of policy benefits, sale of policy, collection of premium, claims handling, and denial of claims, acted in violation of their fiduciary duty to act in good faith.

3.74 As stated in this Complaint and shown in the accompanying Exhibits, Plaintiffs were subject to unfair and deceptive acts/practices in Defendants' advertising, sale, claims investigation and administration, insurance twisting, and the denial of advertised and policy benefits.

3.75 These deceptive acts/practices occurred in insurance trade and insurance coverage.

3.76  These deceptive acts and practices caused damages to Plaintiffs.

3.77  The deceptive statement in the advertisement (<u>Exhibit 2</u>) had the capacity to deceive a substantial portion of the public.

3.78  The Defendants' knowing failure to reveal details/exclusions and benefit limitations of its policy was deceptive within the meaning of the Washington Consumer Protection Act.

3.79  The <u>Exhibit 2</u> letter selling the Cancer benefits policy misleads both by its representation of, "$1,000,000.00 paid out in hard case directly to you," "Spend the money as you wish," and through omission of disclosure of policy terms limiting the policy payout so that one million or any significant portion thereof could never actually be paid, as represented in advertisements.

**Eighth Cause of Action:**
**BAD FAITH / BREACH OF IMPLIED DUTY OF**
**GOOD FAITH AND FAIR DEALING**

3.80  The allegations set forth in Paragraphs 1.1 through 3.79 above are expressly incorporated herein by reference.

3.81  Plaintiffs entered into a contractual relationship with Defendants.

3.82  Implied in every insurance contract in Washington State is a duty of good faith and fair dealing.

3.83   Defendants violated their duty of good faith and fair dealing when they failed to adequately and timely value Plaintiffs' claim.

3.84   Defendants' breach of their duty of good faith and fair dealing caused damages to Plaintiffs.

3.85   Under Washington law, including but not limited to, *Tank v. State Farm*, Defendants owe attorney fees and costs for their acts of bad faith.

<u>**Ninth Cause of Action:**</u>
<u>**DECLARATORY JUDGEMENT/RCW 7.24**</u>

3.86   The allegations set forth in Paragraphs 1.1 through 3.85 above are expressly incorporated herein by reference.

3.87   Plaintiffs seek a judgment from this Court declaring that they are entitled to coverage under the policy.

3.88   Plaintiffs seek a judgment from this Court declaring the amounts of benefits to which they are entitled.

3.89   Plaintiffs seek a judgment from this Court declaring that Defendants are estopped by their bad faith from utilizing any evidence acquired after February 27, 2019 – the date when Defendants received notice of Plaintiffs' claim.

3.90   Plaintiffs seek a judgment from this Court declaring that Defendant NRA has solicited insurance products in Washington State, as defined by RCW 48.17.010(14).

3.91    Plaintiffs seek a judgment from this Court declaring that Defendant NRA has negotiated insurance products in Washington State, as defined by RCW 48.17.010(11).

3.92    Plaintiffs seek a judgment from this Court declaring that Defendant NRA acted as an "insurance producer" in Washington State, as defined by RCW 48.17.010(6).

3.93    Plaintiffs seek a judgment from this Court declaring that Defendant NRA does not have a license authorizing it to act as an insurance producer, as defined by RCW 48.17.010(8).

3.94    Plaintiffs seek a judgment from this Court declaring that Defendant NRA is not a "Surplus Line Broker" as defined by RCW 48.15.070.

3.95    Plaintiffs seek a judgment from this Court declaring that Defendants violated RCW 48.15.020(1).

3.96    Plaintiffs seek a judgment from this Court declaring that policy exclusions including, but not limited to, those limiting repayment of medical expenses in contradiction to Defendants' written statements, should be found void under public policy.

3.97    Plaintiffs seek a judgment from this Court declaring that the contract's policy limits be found to be unconscionable based on Defendants' acts

and omissions in the selling of the $1,000,000.00 cash benefit insurance policy.

3.98  Defendants are liable for Plaintiffs' reasonable attorney fees and costs under *Olympic Steamship Co. v. Centennial Insurance Co.*, Wn.2d 37, 51-53 811 P.2d 673 (1991) and *McGreevy v Oregon Mutual Insurance Co.*, 128 Wn.2d 26, 37, 904 P.2d 731 (1995).

### Tenth Cause of Action:
### NEGLIGENT CLAIMS HANDLING

3.99  The allegations set forth in Paragraphs 1.1 through 3.98 above are expressly incorporated herein by reference.

3.100 Defendants' handling of the insurance claim was unreasonable.

3.101 Defendants are in violation of provisions of the Unfair Claims Settlement Practices Act and Regulations.

3.102 Defendants failed to adequately train Plaintiffs' claims handler in Washington claims handling procedures under Washington law.

3.103 Plaintiffs sustained damages as a result of Defendants' negligent and illegal conduct.

### Eleventh Cause of Action:
### UNFAIR TRADE AND COMPETITION (RCW 19.86.020)

3.104 The allegations set forth in Paragraphs 1.1 through 3.103 above are expressly incorporated herein by reference.

3.105 Defendants' actions alleged in this Complaint constitute violations of RCW 19.86.020.

### Twelfth Cause of Action:
### BREACH OF CONTRACT: EXPRESSED AND IMPLIED

3.106 The allegations set forth in Paragraphs 1.1 through 3.105 above are expressly incorporated herein by reference.

3.107 Plaintiffs entered into a contract with Defendants.

3.108 Plaintiffs complied with their duties under the contract.

3.109 Plaintiffs timely paid all premiums as required under the contract.

3.110 Defendants breached the expressed terms of the contract with Plaintiffs.

3.111 Further, Defendants breached their implied contract with Plaintiffs, created by Defendants' written communications with Plaintiffs in correspondence to the Plaintiffs, disclosing the material benefit of the insurance contract.

### Thirteenth Cause of Action:
### PROMISSORY ESTOPPEL

3.112 The allegations set forth in Paragraphs 1.1 through 3.111 above are expressly incorporated herein by reference.

3.113 Plaintiffs were induced to purchase the cancer insurance plan based upon the Defendants' promise of $1,000,000.00 cash.

3.114 Defendants knew, or should have known, that promising "$1,000,000.00 paid out in hard cash directly to you" would cause Plaintiffs to purchase the insurance policy.

3.115 Plaintiffs relied on that promise to their detriment.

3.116 Defendants never notified Plaintiffs that their promise was deceptive, fraudulent, untrue, or misleading.

## IV.    DAMAGES/ADDITIONAL CLAIMS HANDLING VIOLATIONS

4.1    Mr. Shields has contractual rights to receive benefits under the insurance policy.

4.2    Defendants refused to agree to adequately compensate Mr. Shields, and/or accept his claims based on a loss of life due to cancer.

4.3    This forced Mr. Shields to retain counsel.

4.4    Mr. Shields has a contractual right to be adequately compensated for damages. Defendants failed to properly and timely evaluate his claim.

4.5    Mr. Shields was insured at the time of the loss under the policy.

4.6    As a proximate result of the Defendants' acts and omissions, Plaintiffs were damaged.

4.7    Plaintiffs hereby assert all facts asserted in the insurance fair conduct notice (Exhibit 9) to Defendants.

4.8    Defendants delayed, denied, failed to adequately consider, and rejected a

properly made claim of loss.

**WHEREFORE**, Ronald Shields, an individual, demands judgment

against Defendants for an Order as follows:

1.    Judgment against the Defendants for general damages;

2.    Judgment against Defendants for economic and special

damages incurred by Plaintiffs;

3.    Judgment against Defendants for Plaintiffs' taxable costs and

disbursements incurred herein and for statutory damages and

penalties including the tripling of damages as authorized by the

CPA, IFCA, or other applicable statute as well as enhanced

damages pursuant to RCW 19.86.090, RCW. 48.30.010 and

*Olympic Steamship v Centennial Insurance Co.*, 117 Wn2d 37,

811 P.2d 673 (1991);

4.    Pre-judgment interest and reasonable attorney's fees and costs as

provided by contract, equity, the CPA, IFCA;

5.    Reformation of the insurance policies to match advertised terms;

6.    A finding of equitable tolling in regard to Defendants' tortious

acts;

7.    An order of specific performance as to the delivery of Defendants' promise of $1,000,000.00 cash;

8.    Restitution from Defendants and disgorgement for every premium – with interest – collected from every NRA member that was sent Defendants' false, misleading, and deceptive communication;

9.    A finding that the NRA's duties to Plaintiffs are non-delegable; and

10.    For other and further relief as the Court may deem just and proper.

DATED this __25th__ day of November, 2020.

                         BEST LAW, PLLC

                         _____*s/ Ryan M. Best*_____
                         Ryan M. Best, WSBA 33672
                         905 West Riverside, Suite 409
                         Spokane, WA 99201
                         Telephone: (509) 624-4422
                         Email:  ryan.best@bestlawspokane.com

COMPLAINT FOR DAMAGES - 39